Case number 16-2332 DAGS or numeral 2 LLC et al versus Huntington National Bank et al. Argument not to exceed 15 minutes per side. Mr. Dennis Bila, you may proceed for the appellant. Good morning panel. My allergies are bothering me this morning so pardon me for the puffy eyes and the swollen lips. I'm not sure what it is down here but it got me. This case boils down to a real simple proposition and it seems between us, the lawyers and the courts, we've made it much more difficult. If the doctrine of merger applies in Michigan, then we win. If it doesn't, we lose. And the doctrine of merger says when the lesser estate and greater estate merge in a single title holder, the lesser estate is destroyed. So in this case what we have is Huntington Bank holds two mortgages, a first and a second, a lesser and a greater estate. They assign the second mortgage to 14 Corporation and 14 Corporation forecloses on the second for the purpose, admittedly, of manipulating the bid process to discourage other bidders because they hold the first back in their pocket so they can bid unimpeded by the first yet other bidders would have to take subject to it. So we filed our motions for summary disposition years ago and the district court ruled against me and we came up here and this court said it basically boils down to whether 14 Corporation and Huntington were alter egos. And if so, did the two of them do something that individually they could not have done? Was it wrong and did it result in an injury? This court concluded as a matter of law in our last appeal that Huntington and 14 Corporation were mere instrumentalities of one another. They included that they're one in the same, meaning if either Huntington, 14, and or a combination of the two hold a first and second mortgage, both those mortgages reside in the same person. So then this court sent it back down for to determine whether Huntington and or 14, by foreclosing on the second, committed a fraud or a wrong. You started out by saying maybe there's a way to simplify this case and believe me, I'm all for you there. That resonated with me entirely. But I wonder if there's a slightly different way to simplify the case. Let's assume they all are alter egos and so we'll just call it Huntington. I mean 14 is doing some stuff. We still have a debt of about 5.2 million at the beginning of the saga. We have a sale and I realize you think that doesn't capture what its true value of 1.8. That leaves roughly 3.5 million. In an effort to simplify the case and figure out whether we really need to get into this alter ego stuff, can you go through why, if they are alter egos, Huntington has gotten more than it deserves? I mean it's 5.2 at the beginning. I'll grant you that instead of it being worth your initial foreclosure, 1.8, let's say it's worth 2.3, okay, what they eventually sold it. I know you dispute that. I got that. But unless the district court was required to credit your experts on the value, it seems to me we don't need to get into the alter ego. So if I were trying to simplify this case, I would say let's go to the question of whether we've got to follow the district court's view as to what the quote true value was. Because if it was in the neighborhood of 2.3, don't you agree we don't need to get into alter ego and all that other stuff? Am I so far being fair about it? You may be fair, but I don't agree. Well, fair in terms of framing. Yes, you're fair in terms of framing. So my point is maybe instead of talking alter ego, let's talk about why we have to overrule the district court's view of what the quote true value was of the initial sale. Sure. I understand the question. If true value or fair market value really had anything to do with merger title, I think that would be something the district court would have had to address. I think it's an element that they added that doesn't exist. I'm trying to take you out of the merger. You're the one that wanted to simplify. I'm trying to simplify. It has nothing to do with merger. It's what is the true value of the property that was originally sold for 1.8. They resold for 2.3. Your experts say it's worth over 5. The district court didn't buy your experts. Tell us why that was reversible error. If you're wrong about that, the case goes away. Am I right? I don't believe so, but it's reversible error because the district court was told by this court to consider the fair market value of the real time. It's enunciated in the federal code. Fair market value is this. The district court said I'm not considering fair market value. I'm going to consider fair sheriff value, which is what the district court said over and over in its opinion. It considered was not fair market value, but sheriff sale value. Those are different. We agree at a sheriff sale, properties tend to bring less than they do in the fair market. I thought the sheriff sale value, correct me if I'm wrong, I thought the sheriff sale value was 1.8 and I thought the district court credited 2.3. The district court, absolutely. The district court concluded that Huntington did commit a wrong and they manipulated the foreclosure process and they allowed a negotiated bid at the sheriff sale to occur at a much lower value than what was what the sheriff sale brought, it was something different. He came to a different conclusion, roughly half a million dollars more. But again, he was determining what is a fair sheriff sale value, not fair market value as this court directed him. This court was very clear when we were talking about it. Sheriff sale value is different than fair market value. This court sent it back down for determination on fair market value and the trial court did not do that. I can't tell from the language of the district court, when I look at the testimony and what he's thinking about with respect to experts, I think he looks like he's trying to get to fair market value. That's what I read him to be doing. I realize he's using different words, but I thought he was, in essence, getting to the same point. I can't predict what this judge was trying to get at in his mind. I can only rely on what he wrote down on paper when he said, I need to, according to Sixth Circuit, review fair market value, but that's not what I'm doing. I'm reviewing sheriff sale value. I think those are very different things. I'm not sure about the panel, but I've handled a lot of foreclosure, the sales, hundreds of hundreds, maybe a thousand. What it brings at a sheriff sale is different than fair market value. If I'm sitting in my home negotiating with you and you want to come and buy it, my home is worth more than if the bank is taking it away, there's a big sign on the front door and there's a padlock, and it says this home is in foreclosure. We don't know what the condition of the home is. So they bring different values, and I think the judge in this case used sheriff sale value because that's what he wrote down. That's what he said he used. Counsel, can you help me on this? I understand this colloquy and this fight, but you began by saying, well, the whole issue here is merger, and if there's merger, we win, and if there's no merger, we lose. So how does that issue relate to this issue? Because I understand each one of them separately, but I'm having trouble putting them together. I don't think a court needs to ever get to a monetary issue, fair market value, sheriff sale value, or any of the like. It's very simple. Had Huntington, and I think we all agree on this, had Huntington held the first and second in their own name and done what they did, the first would have been gone and they could not have executed on it. Everyone seems to agree with that. The debate is when they use 14 corporations to manipulate the process, do they get to do something they otherwise would not have been able to do alone? Okay, so just to do the logic tree, these are two strings to the bow. Your first one is if we buy that argument, we don't ever talk about numbers because they lose no matter what the numbers are. If we don't agree with you on that, then we get to this issue. Is that the logical flow here? Yeah, if you don't agree with me on the merger issue and you're doing something contrary to what I believe, which is adding yet another element to merger, you're adding a valuation method, then yes, you've got to get to our other arguments. So it's not that if there's no merger, you lose because if there's no merger, then you still want to fight on the value, okay. If there's no merger, we're done. I agree with that. If the first and second don't merge together. If there is merger, we still have to get to what the thing's worth. I disagree with that. I don't think that's an element. Once the two titles, let's say you own a home. Somebody else owns a home and you have a mortgage on that home and you foreclose on the mortgage and take the home back. Your mortgage doesn't exist anymore no matter what the value was, whether it was $1, $50,000, $500,000, the mortgage is gone because the two estates merged into one. You now are fee simple holder, no mortgage. You do not then get to go execute against that mortgage because you hold the fee. If you hold a first and second mortgage, the same thing occurs. If you foreclose on that home, whether it be on the, if you foreclose on the second, the first is destroyed because title to the first and second merge into a single title holder. When Huntington Bank or 14 forecloses on the second, they now become a fee holder subject to the first. Yet they hold the first. So the first is necessarily by operation of law destroyed and now they hold a fee, no greater nor lesser with or without the mortgage. It's just simply a single estate. Once that mortgage is gone, the first mortgage, there are no more hurdles to get over. You don't evaluate the property or its value. You don't say whether or not the first secured TIF agreements or tax credits or anything else or restaurant services. The first is gone. You no longer have the effect to enforce it. The first is gone, you mean the people don't owe any money under it? Correct. Absolutely. That's the critical point from your side. It's not a title sort of question. Is it in effect forgives the debt? As the district court correctly said, this case, and I'm quoting from the district court at ECF 125 ID 4411, this case turns on whether Huntington and 14 Corp are the legal alter of each other. If so, then at the time of the foreclosure, Huntington was effectively the holder of both the 2004 and 2005 mortgages. And under Michigan law, the remaining debt owed by Baker Lofts to Huntington was extinguished upon the serif sale. The district court was right when it said that. That's exactly the law. There's not another hurdle to say once that mortgage is gone, what was it worth? It's gone. It doesn't come back. It doesn't ever get revived. It's simply gone. Just like if a lender forecloses on a home, the mortgage is gone once the lender takes title. That mortgage never can be revived. It's gone. In this case, the first mortgage which they executed upon after taking the property back was gone at the time they executed under it and the debt was forgiven by operational law. Any other questions? Good morning, Your Honors. Jeff Raffleson on behalf of the Huntington National Bank and 14 Corporation. Judge Sutton, you have accurately identified exactly the right way to simplify this case. This case comes down to whether the value of the property foreclosed upon was greater or less than the amount of the debt. And the court's fact finding, Judge Bell, a 30-year veteran of the federal bench before he stepped down in December, conducted a four-day trial on that and concluded the value that would have been obtained at a fairly conducted serif sale was the $2.355 million you identified earlier. That being the case, applying all the other collateral that Huntington resorted to following the sheriff's sale, there is still over $1.1 million of debt outstanding. So his response is, as I understand it, if there are alter egos, there's this merger doctrine which sounds really lucrative. If that happens, at the sheriff's sale, the other mortgage disappears. And that's not. So then the math changes. So tell us how that works. I'll tell you why that's wrong, Your Honor. And this court has actually already explained that in the previous opinion. In Michigan, there's a statute, MCL 600.3280, which says that if a creditor forecloses at a sheriff's sale and then pursues a deficiency against the borrower, the borrower shall have credit against that deficiency, a set-off or defense, of the true value of the property. That's the source of the true value phrase you were using earlier, Your Honor. That statute did not apply in the Rensen case because there were two separate notes securing different debts and they weren't cross-collateralized. So the Rensen court said, I am going to use the equitable doctrine of merger to make that statute applicable. And in that case, it was unquestioned that the first debt was $500,000. I'm sorry, the first mortgage was secured $1.1 million, the second mortgage secured $500,000, and the property taken was undisputedly worth $3 million. So you had a creditor going in, bidding $500,000, all the debt on the junior mortgage, and then pursuing the $1.1 million deficiency. The Rensen court specifically recognized equity will not arise if the parties didn't intend it and we will not infer an intent of merger if it works against the party holding the interests. Tell me if I'm jumping to the right conclusion or just got it wrong. What I would have intuitively said the right conclusion is, is all this merger doctrine is designed to flaws in sheriff sales. But if you find out that if you credit the sale not by the sheriff's sale amount, but by its true value, you fix all of those problems. And therefore, this merger doctrine disappears. Am I getting it wrong or am I getting it? You are getting it correct, Your Honor. It's a very complicated application in this setting because merger doctrine deals with interests in real estate. You have a first mortgage, you have a second mortgage, you foreclose on the second mortgage, you get a fee which is deemed to subsume the interest in real estate created by the first mortgage. Debt is a function of contract separate from the mortgages. There's really no explanation in any of the cases plaintiff cite or really, to be honest, even in the Rensen case, how results in extinguishment of debt. Now we don't need to resolve that here because we also have the Torres case, a case this Court has already relied upon. And the Torres case actually does a decent job of explaining it in a circumstance more applicable to the one here. If we want to talk technical merger doctrine, and I want to get off that as quickly as we can, the foreclosure upon the second mortgage does extinguish the interest in real estate created by the first mortgage. But because the second mortgage secures all debt, because there's cross-collateralization, also secured by the first mortgage, the debt still exists as a result of the contractual documents creating the debt, and the foreclosure upon the second mortgage doesn't extinguish remaining debt. I'll refer the Court to, well, it's page 7 of this printout of the Torres opinion, asterisk 8 from page numbers, where they explain that operation. But let's go back and understand what Rensen... One question about Torres. Under that case, under those facts, was it that the mortgage was extinguished only if the property is worth less than the debt? The mortgage is extinguished if the property is worth more than the debt, Your Honor. And that's really the crux of the point, and that's what this Court recognized in its earlier opinion. On page 8, I'm sorry, page 21 of this Court's earlier opinion, the paragraph begins, here, unlike Torres, questions of fact remain as to whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt. That is, in Rensen, like we said, we had a creditor unquestionably going for a windfall, a double recovery. And the Court said under those circumstances, and the Rensen Court specifically uses those words, under these circumstances, equity will not infer that the creditor intended to keep the estate separate. It would have been inequitable. In your view of Rensen, the merger there works in favor of the debtor, and here they want it to work opposite? My view of Rensen is that merger does not arise automatically. It did arise in Rensen because the creditor was seeking a double recovery. It didn't arise in Torres because the creditor was still underwater. It doesn't arise in this case because Huntington Bank is still underwater to the tune of $1.1 million. This just comes back to my point. I thought the thing driving this was the falsity of the value of the sheriff's sale. Isn't that what's driving the merger doctrine's application in Rensen? And that's what allows for effectively the double recovery? No, I have to disagree with that. I believe what's driving the applicability of merger is the fact that the creditor was seeking a double recovery. And so equity wouldn't intervene to prevent a merger. But he's seeking a double recovery because it's not really underwater, because the value of the whole property is greater than all the debts. Correct. Correct. That is another way of coming to that. So if the property is worth less than the debt, both as to the senior and junior mortgages, the creditor can go after both properties. Correct, Your Honor. That is the creditor. And that's the approach here. I'm sorry. Under the principle of Rensen, the creditor's intent not to have those estates merge wins out because it is against the creditor's interest. The creditor isn't doing something greedy like pursuing a double recovery or windfall. I would contend here, those advocating automatic application of the doctrine of merger, even in cases where the properties were substantially less than the debt, they are the ones seeking the windfall. They're seeking extinguishment of debt that is unrepaid. That's what's happening here. Under Rensen, the sheriff's sale value was $500,000. What was the total amount of the debt? $1.6 million. Okay. So how would Rensen have come out if sheriff sales $500,000, state court looks at the true value of that property and decides it's more than $1.6 million? Would they have said no merger? No, they would say merger. If the true value was worth more than the debt, then the debt is satisfied upon taking the property. Okay. Well, all right. Do you now understand where I'm coming from? This whole state law doctrine is trying to capture the difference between unfair use of sheriff sale value versus true value. Correct. Correct. I agree with that. So we are on the same page. I think we are on the same page. So then we have to go to, so what was the true value of the property? Bingo, right? And in this case, the judge made very detailed findings of fact as to what he thought the true value of the property was. He thought it was the $2.355 million. While he never expressly said that he felt Huntington or 14 Corp. had manipulated the foreclosure process, he had questions about it and concerns about it. He could not conclude it was a fair sheriff sale. So he looked at the totality of the evidence, judged the weight of the documents presented and the credibility of the witnesses, and determined that the subsequent sale to GR Developments for $2.355 million represented the value that would have resulted at a fairly conducted sheriff sale. Again, he cited considerable Michigan law, and we can go over it again. This court, in fact, has cited the same proposition that sheriff sales don't produce, sheriff sales don't produce a fair market value transaction. There are just too many artificial pressures. As Mr. Biela indicated, they produce something less than fair market value. So if we're starting from the Michigan statute, our source of the phrase true value, if we're doing anything to judge the outcome of a sheriff sale, it ought to be based on a sale value that is realistically achievable at a sheriff sale. And I believe that is why, well that's one of the reasons Judge Bell used this fair sheriff sale rubric. The other is the definition of wrong, for purposes of piercing the veil analysis, which came from this court and elsewhere, is did Huntington or 14 Corp. obtain a price advantage through the use of the corporate form and the assignment of the mortgage? And the only way to answer that question is, well they did if they got it for less than would normally have obtained at a sheriff sale. So for purposes of this analysis, I believe true value is something less than fair market value. But I don't want to go overboard on that analysis. This court did use the phrase fair market value a number of times in its earlier opinion. However, there was really no briefing on the point and not much discussion. I don't consider fair market value to have been law of the case. But even if you use fair market value, the numbers still don't work the way plaintiffs want them to. The fair sheriff sale value that the court determined was $2.355 million. The court also made very detailed findings on the other evidence, all of which went to fair market value. That's what both experts opined to, that's what the supposed real estate investors were opining to. The judge made those findings because he wanted to use fair market value as a check against his conclusion of fair sheriff sale value. It was about 75% and that gave him comfort. But he made very detailed findings over which expert presented more credible evidence and that was the evidence presented by Huntington's expert Jeff Gensing. His conclusion was the fair market value of the property was $3,080,000. If you use that figure instead of the judge's fair sheriff sale value, there's still over $425,000 of debt unrepaid. So we still do not have a situation where Huntington Bank was seeking a double recovery or a windfall. We have a debtor who is seeking to have the $425,000 wiped out through an inappropriate application of the merger doctrine. If we have to make a determination of which of those two is right, does that affect your interest? That is, do you lose $700,000 if we say he should have used fair market value or is it just as long as you're underwater, you can have taken these remedies that you took? There's no other collateral, I'm assuming. There is no other collateral. A representative of Huntington Bank is in the audience. You either lose $0,000 or $0,000 minus $700,000. Right, that's right. We're either underwater $425,000 or we're underwater $1.1. Maybe? I'm sorry? That's right. I don't believe my feet. It depends on the differential. I was in your position once, that would not be fair. But Judge Boggs raises a very interesting point, which is the allegation that Judge Bell didn't follow this Court's mandate. That's just false. And I want to turn back to page 21 of this Court's opinion. That's the paragraph that begins, here unlike Torres, questions of fact remain as to whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt. That paragraph concludes after discussing some of the evidence that was of record the last time we were here. Thus, a question of fact exists as to whether Huntington used 14 to commit a wrong for purposes of piercing the corporate bail. The judge made no finding. The judge specifically said, because I conclude the value, the true value of the property was worth substantially less than the debt, I don't need to get to the second and third elements of the piercing the bail analysis, exactly as you suggested. That is, at the end of the day, Huntington is going to be underwater. And so any talk about whether a wrong was committed, a price advantage was obtained, is still pretty hypothetical. But the debt is still not repaid. The resort to the other collateral was justified, and there's no more collateral to resort to. And the debt, there's really only one debt, even though there are two mortgages. Is that correct? Because they were cross-collateralized, which is why the presumption doesn't make sense. They advocate a presumption where someone bidding on the second mortgage takes into account the debt secured by the first mortgage. That would make sense if they were separate debts, because foreclosing on the second mortgage still requires satisfaction of the first mortgage. But where they're cross-collateralized, every dollar spent or realized in foreclosure on the second mortgage also satisfies the exact same debt secured by the first mortgage. Had somebody bid $5.25 million at the sheriff's sale, we wouldn't be here, Your Honors, because all of the Huntington debt would have been wiped out. I see my time is up. Almost. I have five seconds. I don't want to burn the Court with five more seconds unless you have any questions. Apparently not. Thank you. Any rebuttal? Thank you, Your Honor. We're getting sidetracked talking about dollars. It boils down to this. You've got a second mortgage. You've got a first mortgage. You've got a promissory note sitting over here as well. When you foreclose on the second, the debt contract gets a promissory note sitting over here. So you foreclose on the second mortgage, which gives you equitable title, takes out the first. The first is now gone. The debt is still sticking out here. But you don't get to take this first mortgage, which has very specific enforcement provisions in it that says you can hold sheriff's sales, buy advertisement. You don't get to rely on that. You've still got your debt. No first mortgage. You can still sue the debtor on the first mortgage. You can't avail yourself of a sheriff's sale and sell a TIF worth two million dollars. You can't sell restaurant equipment worth more money under the provisions of this contract because that contract was gone when you foreclosed on the second. That's all we're saying. They still get to go sue the debtors for the $3 million they claim their oath. You've just got to sue them for it. They don't get to use it. The provisions of the contract, are you saying as elaborated by Rensen or just if I read the contract that it will make it clear? By Michigan law, the doctrine of merger is very clear. When a lesser and greater estate merge in one titleholder, the lesser is gone. It's destroyed. It comes back to Rensen. Rensen articulated a very old principle. Rensen said that Michigan adopts the doctrine of merger. Rensen didn't create that law. That law had been around for centuries, decades. It's been around for a decade. It says when a lesser and greater estate merge in a single titleholder, the lesser is destroyed. Rensen just articulated that. It didn't create law or change law. Any questions? Thank you.